FILED

08 JAN 25 PM 1:30

UNITED STATES DISTRICT COURT
FOR
THE NORTHERN DISTRICT OF   CALIFORNIA



| | | |
|---|---|---|
| JAMES DAVIS BENNETT, | ) | CV 07-5686-CRB |
| | ) | |
|        Plaintiff, | ) | PLAINTIFF'S JUDICIAL NOTICE PURSUANT |
| | ) | TO RULES OF EVIDENCE 201, PLAINTIFF'S |
| vs | ) | OPPOSITION TO DEFENDANT'S MOTION TO |
| | ) | DISMISS, AND PLAINTIFF'S MOTION FOR |
| PETER L. SHAW, et al., | ) | SUMMARY JUDGMENT PURSUANT TO CIVIL |
| | ) | PROCEDURES RULE 56. |
|        Defendants. | ) | |
| | ) | |

**TABLE OF CONTENTS**                                    **PAGE(S)**

Table of Exhibits...........................................iii

Table of Authorities.........................................iv

Judicial Notice...............................................1

Verification..................................................8

Opposition to Defendant's Motion to Dismiss:

    Introduction.............................................9

    Issue...................................................13
        a.   Is Defendant acting under color of law?........14

    Arguments...............................................14
        a. Defendant acts under pretense of § 3006A(b).....14
        b. Defendant acts absent court order & in conflict.29

    Conclusion..............................................30

Summary Judgment-FRCVP Rule 56:

    Introduction............................................31

    Issue...................................................32

        a.   Can Federal Defenders appoint counsel?.........32

    Argument................................................32

        a. Only Judges can appoint counsel.................32

    Conclusion..............................................34

## TABLE OF EXHIBITS

| Exhibit | Subject |
|---------|---------|

A..........................Jurisdiction for Lenders

B..........................No Grand Jury Jurisdiction

C..........................Plaintiff warns Judge about Jurisdiction

D..........................Judge, US Attorney discuss un-charged counts

E..........................R-29 Acquittal Opinion

F..........................Refusal to Identify Convictions at Sentencing

G..........................Ninth Circuit Docket-Government Default

H..........................Indictment's Counts 5,6,&7 Lender not Licensed

I..........................Federal Defender response to conflict

J..........................Administrative Office of US Courts Chart

K..........................Federal Defender conflict with Plaintiff

L..........................District Dkt no order for appointments

M..........................Trevino admits he has no appointment order

N..........................Defendant Shaw's Default

**TABLE OF AUTHORITIES**                    **PAGE(S)**

**Constitutional Directives:**

-Fifth Amendment.....................................9,22

-Sixth Amendment.................................9,13,22,28

**Statutory Directives:**

-18 USC § 3006A..........................ii,29,30,31,32,33

-18 USC § 225....................................5,10,12,14

-28 USC § 1915A................................13,26,27,30

-42 USC § 1983..........13,14,15,16,17,18,20,21,25,26,27,29

**Federal Rules:**

-FREVD Rule...............................................i,1

-FRCVP Rule 56..................................i,ii,1,31,33

-FRCRP Rule 29..................................iii,4,5,28

-FRCVP Rule 12...........................................13

-FRCVP Rule 8..................................13,18,21,28

**Common Law Directives:**

-Adickes v. S. H. Kress & Co.,398 U.S. 144..........15,18,19

-Cox v. Hellerstein, 685 F.2d 1098...............25,26,27,28

-Flagg Brother Inc. v. Brooks, 436 U.S. 149............15,16

-Heck v. Humphrey, 512 U.S. 477........................13,26

-Jackson v. Metropolitan Edison, 419 U.S. at 349..........16

-Jones v. Alfred H Mayer Co., 392 U.S. 409................16

-Kirtley v. Rainey, 326 F.3d 1088..........................21

-Lee v. Katz, 276 F.3d at 554-55...........................22

-Monroe v. Pape, 365 U.S. 171.............................15

-Polk County v. Dodson, 454 U.S. 312....13,18,25,26,27,28,29

-United States v. Price, 383 U.S. 787...............17,20,28

UNITED STATES DISTRICT COURT
FOR
THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES DAVIS BENNETT,<br><br>           Plaintiff,<br><br>vs<br><br>PETER L. SHAW, et al.,<br><br>           Defendants. | ) CV 07-5686-CRB<br>)<br>) **PLAINTIFF'S JUDICIAL NOTICE PURSUANT**<br>) **TO RULES OF EVIDENCE 201, PLAINTIFF'S**<br>) **OPPOSITION TO DEFENDANT'S MOTION TO**<br>) **DISMISS, AND PLAINTIFF'S MOTION FOR**<br>) **SUMMARY JUDGMENT PURSUANT TO CIVIL**<br>) **PROCEDURES RULE 56.**<br>)<br>) |

### JUDICIAL NOTICE

The following are factual events occurring in District Court

Case Number 03-0025(B)AHS and Appellate Court Case Number 06-50580.

I certify and verify the veracity of the following facts under the

penalty of perjury and would support each if called to testify.

Therefore, I request this court take judicial notice pursuant to

Federal Rules of Evidence Rule 201(a), (b)(1)-(2), and (d). As

required by Rule 201(b)(2) the facts below are followed by

documented evidence and or the related source of their verification.

1. Just prior to Christmas and New Years 2003-2004 Chief

Judge Alicemarie H. Stotler allows Bennett's retained counsel to

motion off prior to Bennett's location of replacement counsel.

Docket number(hereafter Dk#) 62.

-1-

2. After Bennett narrowed his search for new counsel to two firms; Judge Stotler orders Bennett to go down and apply for representation with the Federal Defenders Office. Exhibit K, DK# 67.

3. After being informed that the Federal Defenders had a conflict with Bennett and against Bennett's wishes; Judge Stotler appoints CJA attorney Michael S. Meza. Exhibit K, Dk# 69.

4. Meza makes motion to suppress evidence based primarily on a lack of Federal Jurisdiction resulting from FBI Agent Michael Rawlin's false search warrant affidavit claiming a Federally insured Bank; Flagstar, made the loans for the purchase of the properties he was investigating. Exhibit A, Dk# 79.

5. During the suppression hearing assistant US Attorney Lawrence E. Kole admits and Judge Stotler confirms that a non-federally insured institution; Long Beach City Mortgage, was the true company making the loans which were the subject of agent Rawlin's false affidavit. Exhibit A, Dk# 93.

6. Although US Attorney Kole and Judge Stotler admit that Flagstar was not the company who made the loans for the purchase of properties in the affidavit and in the indictment's counts 5, 6, and 7;

-2-

trial on these counts went forward even in face of the lack of Federal

Jurisdiction. See page 5 lines 10-26 and page 6 lines 1-3, presented

as counts 5, 6, and 7 of the trial indictment in Exhibit B versus

the documents from the true lender Long Beach City Mortgage in

Exhibit A.

7. Thereafter, CJA attorney Michael Meza makes request for

funds for evidence copies(Dk# 116) and for an investigator to locate

witnesses and serve subpoenas. Dk# 124. Both requests were denied by

Judge Stotler. Dk# 117 & 124.

8. As a result Meza motions to be relieved(Dk# 120) and Judge

Stotler denies. Dk# 123.

9. Then Bennett makes motion through appointed counsel to bring

in retained counsel or in the alternative to represent himself. Dk# 152.

10. During the hearing related to ¶# 9 above Bennett warns Judge

Stotler about the Jurisdictional problems related to Government Fraud

associated with their known falsification of Federal Jurisdiction

through misrepresenting Federally insured lenders in place of

Non-federally insured lenders. Exhibit C & Dk# 153.

11. After denying Bennett's motion mentioned in ¶# 9 above and

during trial Judge Stotler, CJA appointed attorney Meza, and un-licensed

assistant United States Attorney Brett A. Sagel all discuss which of

the multiple un-charged, un-indicted, un-arraigned violations were

to apply to each of the un-charged, un-indicted, un-arraigned counts.

Exhibit D & Dk# 197.

12. Close examination of the above reveals that the District

Court not only falsely maintained Jurisdiction over Counts 5, 6, and 7

(the falsified Flagstar Loans mentioned in ¶# 4, 5, and 6 above)

but also in the entire criminal proceedings as none of the indictments;

to include the final indictment used for trial, were authorized

by the Grand Jury as evidenced by the lack of signatures. Exhibit B

& Dk#s 1, 82, and 129.

13. Because of the forced representation of CJA appointed

Attorney Meza, pertinent evidence related to the false indictment

and charges were totally concealed from Bennett and the jury until

after conviction when Bennett was allowed to file a Federal Rules

of Criminal Procedures Rule 29 requesting acquittal on all

charges. Dk#s 1, 82, and 129.

14. Subsequently, Judge Stotler acquits Bennett of count 12

(18 USC 225-Continuing Financial Crimes Enterprise) for the very

reasons Bennett warned her of during his request to bring in retained

counsel and the very reason she and Kole admitted during the search

warrant suppression hearing(see ¶#s 4, 5, 6, 10, 11 & 12 above);

Government falsifying Federal Bank related charges. Exhibit E &

Dk# 254.

　　15. Count 12; 18 USC 225, requires convictions totaling 5 million

or more in the predicate offenses associated with Federally Insured Banks.

Therefore, in order to issue acquittal in count twelve it necessarily

requires the issuance of a number of acquittals in the predicate

offenses. In Stotler's opinion in Exhibit E she presents two charts

of offenses alleged by the Government to have been associated with

Federally Insured Banks. These predicate offense counts  appearing within

the two charts appear to be the counts which sustained convictions

which are not being reversed by the R-29 acquittal. All other counts

to include those appearing in the un-authorized indictment as

counts 1, 5, 6, 7, 8, 9, & 10 are not included in the charts but

are included in the chart's "TOTAL Gross Receipts-Sum for Nonfinancial

institutions" thus supporting Judge Stotler's and US Attorney Kole's

admission(Exhibit A & Dk# 93) that the non-federally insured lender

Long Beach City Mortgage and not Flagstar Bank was the true lender

in counts 5, 6, and 7 contrary to that which was misrepresented

in the search warrant affidavit and the un-authorized indictment.

Because of the confusion created by the manipulation of Federal

Jurisdiction; at sentencing Bennett requested Judge Stotler

clarify and support all convictions with verdict forms(Exhibit F

& Dk# 316). She outright refuses to disclose the violations of

conviction and suggests Bennett take it up on appeal. Exhibit F.

16. On Appeal Bennett files his opening brief which outlines

the documented events above and questions district jurisdiction

because of the lack of Grand Jury authorization. Exhibit B and

Exhibit G-entry date 2/5/07.

17. The Government reads the brief, learns about the mention

of a lack of Federal Jurisdiction, defaults, and requests the

court remove the brief and Bennett from participation. Exhibit G-

entry dates 3/9/07 and 3/30/07.

18. Commissioner Peter L. Shaw takes over all further

decisions on Bennett's appeal and becomes responsible for striking

the opening brief, removing Bennett's Pro Se status, and appointing

unwanted CJA counsel to re-write the brief. Exhibit G-entry dates

4/27/07 and 6/8/07.

19. Thereafter Mr. Kennedy appoints James M. Crawford and

when he requests to be relieved Kennedy appoints Phillip A.

Trevino. Exhibit G-entry dates 6/08/07, 8/6/07, 9/7/07

and 9/21/07.

20. During Kennedy's appointment of James M. Crawford Plaintiff

Bennett sends a letter to Mr. Kennedy requesting he not take any

actions and reminding him of his conflict of interest with Plaintiff.

Mr. Kennedy ignores the letter, appoints James M. Crawford, and

through his current counsel Gail Ivens proceeds to explain the

process of appointment. Exhibit I.

21. Being highly suspicious regarding Mr. Kennedy's involvement

dispite his admitted conflict and questionable procedures used

by Defendant Shaw to retroactively strike Plaintiff's filed brief;

Plaintiff initiates civil action against Crawford, Kennedy and

others(Defendant's motion Exhibit I). Thereafter Crawford requested

-7-

and was granted removal from representing Plaintiff(Exhibit G-entry dates 8/6/07, 9/7/07, and 9/21/07).

22. At this point Defendant Shaw directs Mr. Kennedy to appoint Defendant Trevino(Exhibit G-entry dates 9/7/07 and 9/21/07).

23. After the appointment of Trevino the Plaintiff inquires into the legitimacy of that appointment by requesting the specific order referenced by Defendant Shaw at the Circuit(Exhibit G-entry dates 7/3/07 and 9/21/07).

24. On 7/3/07 and 9/21/07 Shaw records in the Circuit docket that the orders appointing Crawford and Trevino were filed in the District(Exhibit G). A quick glance at the District Docket reveals no such orders were ever filed(Exhibit L). This lack of authority to represent the Plaintiff is confirmed in a letter from Defendant Trevino where he admits "I possess no order of the sort you seem to believe exists"(Exhibit M). In effect Defendant Shaw's entries in the Circuit Docket misrepresents the truth.

I James Davis Bennett verify the veracity of the facts outlined above under the penalty of perjury.

Signed: _____

## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
### Introduction

25. Although Defendant Trevino seems to believe that this

complaint revolves around Plaintiff's "perceived right to proceed

pro se on his direct appeal"(see motion page 3 ¶2-first seven pages

of Defendant's motion dedicated to this subject). Reality brings the

focus to the true reason for the complaint; which is, the Plaintiff

was deprived legal rights guaranteed by the United States Constitution

through the Fifth Amendment's Due Process clause and the

Sixth Amendment's right to be informed of the Nature and Cause of

Accusations; such accusations are to be returned by an Authorized

Grand Jury and not the Government(see complaint page 1 ¶2).

26. In support of his complaint the Plaintiff avers that

Criminal Justice Act(CJA) attorney Michael S. Meza proved to be

Government actor acting "under the color of" federal law.

He assisted the Government in gaining a conviction requiring

Five Million Dollars worth of predicate counts by increasing the number

of counts form 12 to 25 and increasing the number of violations per

count from 1 to 5; all without Grand Jury Authorization(Exhibit D-

-9-

compare with the unauthorized indictment in Exhibit B).

27. After being allowed to proceed in pro se(see motion
Exhibit A Docket entry #235) the Plaintiff obtains acquittals on
a number of the predicated counts supporting the conviction in count
twelve; 18 USC § 225(Exhibit E).

28. As one analyzes the Government returned indictment one
can clearly see there are only 11 predicate counts to support a
conviction in count 12; 18 USC § 225(Exhibit B). Count 11 was
dismissed with predjudice during trial(motion Exhibit A Docket
entry #190). The dollar amount of the remaining 10 predicate count
loans total $2,412,500.00.

29. Keeping this total in mind, one is requested to examine
Exhibit E referenced in the Judicial Notice. Looking at the two
charts Judge Stotler presented supporting her acquittal of
count twelve one can clearly see the predicate count loans total
$5,532,021.21(Exhibit E page 5 lines 3-4) and $5,869,334.13(Exhibit
E page 6 lines 8-10) respectively in the two charts.

30. It is easy to see that the predicate count total of the
false indictment is far less than the totals used by Judge Stotler

−10−

in her acquittal analysis. When exploring the possible reasons

for the discrepancy attention is directed to the verdict form

submitted to the court by the CJA Attorney that Judge Stotler

forced the Plaintiff to go to trial with(Exhibit D). The verdict

form unequivocally demonstrates that there are 25 predicate counts

being presented to the jury. This conflicts with the false indictment

created by the Government which contains 11 minus the 1 dismissed;

thus leaving 10(Exhibit B). Also; when comparing CJA Meza's

verdict form with the charts presented in Judge Stotler's acquittal

one notices there are a number of the predicate counts that appear

in both but some appearing in CJA Meza's verdict form are missing.

The missing ones are deemed to be the predicate counts that Judge

Stotler issued the acquittals on; they include counts 1, 5, 6, 7,

8, 9, and 10 on the Government's false indictment. Also notice

that each of the 25 un-indicted, un-arraigned, and un-charged

counts had wire fraud, wire fraud affecting a financial institution,

mail fraud, mail fraud affecting a financial institution and Bank

fraud alleged against each(three each are shown in CJA Meza's

-11-

verdict form the additional two-wire and mail fraud affecting a

financial institution-were eased in through court instruction

number 26; Exhibit D).

    31. There is only one thing that is perfectly clear and that

is the only way to determine what these officers of the court did

is to force them to produce the verdict form used to obtain the

conviction in count 12; 18 USC § 225.

    32. While attempting to determine the basis of the sentence

after the predicate count acquittals; the Plaintiff asks the

the sentencing Judge what convictions remained which supports

the prison term. She refused to answer then suggests the Plaintiff

take it up on appeal(Exhibit F).

    33. On February 5, 2007 the Plaintiff filed his opening brief

disclosing the problems which occurred at the District(Exhbit G-

entry date 2/5/07).

    34. Thereafter, Defendant Shaw goes through a series of

unconstitutional judicial moves to appoint CJA Attorney Defendant

Trevino to edit out his CJA predecessor Meza's actions committed

"under the color of" federal law(Exhibit G-entry dates 4/27/07

through 9/21/07 and complaint ¶ 15-17).

### ISSUE

35. The Defendant presents three arguments supporting his

contention that the instant complaint qualifies for dismissal under

Title 28, United States Codes, Section 1915A:

i.   that Plaintiff has no right to proceed pro se on appeal,
ii.   that pursuant to Polk v. Dodson Public Defenders are not government actors for 42 USC § 1983 & Bivens, and
iii. that Heck v. Humphrey's favorable outcome doctrine bars the instant action.

36. The Plaintiff responds to arguments i and iii as follows:

i.   Defendant misreads the complaint as being one requesting remedy for deprivation of Plaintiff's pro se status when in fact the Plaintiff avers Defendant deprived Plaintiff of his Sixth Amendment right to be informed of the "Nature, Type, and Origin of" charges Defendant is concealing on appeal on behalf of CJA Meza and the Government (Exhibit D).

iii. Defendant mistakenly believes that Heck v. Humphrey's favorable outcome doctrine provides him with an affirmative defense. Defendant does not mention that an affirmative defense must be plead and proved by the Defendant(FRCVP Rule 12 & 8 and Black's Law 8th Edition). Therefore, Defendant must first present an indictment signed by a grand jury containing all 25 counts, present verdict forms supporting that indictment, and most importantly he must do what the sentencing judge refused to do; that is prove which of the many un-indicted, un-arraigned, and un-charged counts presented to the jury; with the assistance of his CJA predecessor, forms the basis of his affirmative defense(Exhibit B, D, E, and F).

-13-

37. Therefore, the Court is only truly faced with one

legitimate straightforward issue to consider in deciding

Defendant's Motion to Dismiss:

> a. 42 USC § 1983 and its Federal Common Law
> counterpart Bivens requires as one of two
> of its' conditions that a Plaintiff prove
> that the Defendant acted "under the color
> of" state or federal law. CJA appointed
> attorney Michael S. Meza assisted the
> Government in obtaining convictions by
> providing a verdict form used to increase
> charges in the Government's effort to ful-
> fill the $5,000,000 prerequisite of count
> 12 18 USC § 225 and when the Plaintiff had
> the convictions overturned CJA appointed
> Defendant Attorney Trevino accepts the
> responsibility of editing Plaintiff's brief
> to exclude the actions of the Government
> and his predecessor Meza. **Is the Defendant
> a Government actor for the purposes of acting
> under the color of federal law?**

### ARGUMENTS

> a. The Defendant is a Government actor function-
> ing "under the color of" federal law because:
> 1)he is a joint participant with the Govern-
> ment, 2)he acts in an exclusively Governmental
> function of bringing and failing to disclose
> un-indicted charges, 3)the government used its'
> coercive influence to force Trevino's services upon
> the Plaintiff while they were not needed as
> briefing was complete and the Government had
> defaulted, and 4)there is a inseparable nexus
> between the precessor CJA attorney's introduction
> of un-indicted counts, the Government's manipul-
> ation and concealing of verdict forms, the
> sentencing judge's reluctance to state the vio-
> lations supporting the judgment of imprisonment,
> and Defendant Shaw's unauthorized behavoir used
> to remove the Plaintiff and his brief from the
> record while at the same time curing the Government
> default.

38. In proving the above argument our focus begins with

Section 1979; which came onto the books as § 1 of the Klu Klux

Act of April 20, 1871(AKA: 42 USC § 1983 and the subsequent

Federal Common Law counterpart Bivens v. Six Unknown Agents).

Monroe v. Pape, 365 US 171. In Monroe v. Pape the Supreme Court

commented that the leading scourge of evil prompting the creation

of the federal remedy in § 1979 for violations of constitutional

rights, privileges, and immunities was the actions of Officials

who abused their positions in conjunction with a group of citizens

known as the "Klu Klux Klan" id at 171-173.

39. The Supreme Court spelled out two conditions required to

state a claim in a 42 USC § 1983(Bivens) action: 1)Plaintiffs

must show that they have been deprived of a right "secured by

the Constitution and the laws" of the United States and 2)they

must show that the Defendant deprived them of this right while

acting "under color of any statute". Adickes vs S. H. Kress &

Co., 398 US 144, 145, 26 L Ed 2d 142, 90 S Ct 1598(1970).

40. While addressing the distinction between the two conditions

set out in Adickes the Supreme Court goes on in Flagg Brother,

-15-

Inc. vs Brooks 436 US 149, 156, 56 L Ed 2d 185, 98 S Ct 1729, to

state that "A moment's reflection will clarify the essential

distinction between the two elements of a § 1983 action. Some

rights established either by the constitution or by federal law

are protected from both governmental and private deprivation. See,

e.g., Jones v Alfred H. Mayer Co. 392 US 409, 422-424, 20 L Ed 2d

1189, 88 S Ct 2186, 47 Ohio Ops 2d 43(1968)(discussing 42 USC

§ 1982[42 USCS § 1982]). Although a private person may cause a

deprivation of such a right, he may be subjected to liability

under § 1983 **only when he does so under color of law.** Cf.

392 US, at 424-425, and n 33, 20 L Ed 2d 1189, 88 S Ct 2186, 47

Ohio Ops 2d 43. However, most rights secured by the Constitution

are protected only against infringement by governments. See, e.g.,

Jackson, 419 US, at 349, 47 L Ed 2d 477, 95 S Ct 449; Civil Rights

Cases, 109 US 3, 17-18, 27 L Ed 835, 3 S Ct 18(1883).

41. As indicated above the Supreme Court has established that

the Government or a private party can be held to be acting under

the color of state or federal law for the purposes of a 42 USC

§ 1983/Bivens action. The court has also addressed cases where

the Government and a private party or group participates in a

joint endeavor under the color of law to deprive citizens of

their constitutional rights. This is outlined in United States

vs. Price, 383 US 787, 794, 16 L Ed 2d 267, 86 S Ct 1152, where

a group of Mississippi police joined with a group of citizens to

deprive black detainees their constitutional rights by freeing them,

tracking them down, and then killing them; all under the color of

state law. In this despicable case the Supreme Court commented

when assigning the requisite action "under the color" of state law

to private co-participants that; "This action clearly

attributable to the State, was part of the monstrous design described

by the indictment. State officers participated in every phase of the

alleged venture; the release from jail, the interception, assault

and murder. It was a joint activity, from start to finish. Those

who took advantage of participation by state officers in accomplishment

of the foul purpose alleged **must suffer the consequences of that**

**participation.** In effect, if the allegations are true they were

participants in official lawlessness, acting in willful concert

with state officers and hence under color of law." id at 795.

42. As the Supreme Court made clear in Adickes; there are
only two prerequisites necessary in order to state a claim in a
§ 1983/Bivens action: 1)Plaintiff must allege the violation of a
constitutional right and 2)Plaintiff must allege that the
violation was accomplished under the pretense of law(see complaint
¶ 22).

43. In Defendant's Motion he does not dispute that he and
Defendant Shaw has violated Plaintiff's Constitutional rights
(Exhibit N-Defendant Shaw's default judgment which is taken as
an admission of all allegations within the complaint and is therefore
res judicata pursuant to FRCVP Rule 8(d)). He only disputes that
he was not acting under the color of law and in support of his
contention he quotes Polk County vs. Dodson, 454 U.S. 312, 319-28
(1981)(motion page 10 ¶ 2). Therefore, the only question before
the court is the second condition outlined by the Supreme Court in
Adickes; that is, did Defendant Trevino act under the color of federal
law when he participated with Defendant Shaw in violating the
Plaintiff's constitutional right to be informed of the "Nature,

Type, and Origin of the charges".

44. The Supreme Court has made it clear in the cases presented

above that there are three fact scenarios that are capable of

satisfying the under the color of law requirement stated in

Adickes; they are:

     a. Government actions,
     b. Private party actions under Government
        authority, and
     c. Joint Government and Private party
        actions.

45. The fact scenario surrounding the instant case falls

within item "c" above; Joint Government and Private party actions.

And, as the Plaintiff has made clear in the Judicial Notice

this case involves joint Government and private party CJA attorney

particpation in "every phase" from the fraudulent search warrant

affidavit( ¶ 4, 5, & 6), to forcing representation of CJA attorney

Meza( ¶ 9 & 10), to ignoring Plaintiff's warnings regarding

Government falsification of counts & violations( ¶ 10 & 11), to

falsifying Grand Jury Jurisdiction( ¶ 12), to presenting an

acquittal but hiding the actual predicate counts which were

acquitted( ¶ 15), to allowing Defendant Shaw to retroactively

strike Plaintiff's opening brief revealing fraud; and, to illegally

assigning the job of editing the brief to Defendant Trevino who

to this day continues to conceal the violations( ¶ 16, 17, 18, 19,

and 20).

46. The Judicial notice outlines the coordinated activity used

by the Government, CJA attorney Meza, CJA attorney Crawford, and

CJA Defendant Trevino. It is comparable to those joint actions

between the Klu Klux Klan and state Government  which prompted the

need for the creation of the § 1983/Bivens remedy.

47. Therefore, the coordinated criminal actions within the

instant case is more comparable to the coordinated injustices that

are outlined in United States vs. Price, 383 U.S. 787, 794 where

state government employees teamed up with private parties to hunt

human beings for the purpose of satisfying their warped thirst

for what they perceived as justice; murder!

48. In the instant case the Judicial Notice outlines a coordinated

joint venture between the Government and appointed attorneys

through abuse of the CJA program in pursuit of the same warped thirst

for what they believe to be justice; false imprisonment!

-20-

It identifies the chase of the Plaintiff through the Judicial

system as the Government and CJA Defendant Trevino attempt to cover

up all the occurrances clearly evident at the district level. This

chase is chronologized in the Defendant's own exhibits(see motion

Exhibits A-I). And, as was the case in Price it will ultimately

result in all responsible parties being brought to justice whether

that be now or at some later date.

49. Therefore, the task before the court today is the

determination of whether Defendant Trevino has acted jointly with

the Government through Defendant Shaw in Shaw's admitted violation

of § 1983/Bivens(FRCVP Rule 8(d) default admission). In addressing a

a similar question the Ninth Circuit used four test to identify

joint private and government action related to Adickes' second

condition requiring the deprivation be committed under the color of

law. Satisfaction of any one of the test is deemed action under the

color law for the purpose of a § 1983/Bivens action. Kirtley v. Rainey,

326 F.3d 1088(9th Cir. 2003). The four test are:

      a. Public Function Test,
      b. Joint Action Test,
      c. Compulsion Test, and the
      d. Nexus Test.

-21-

50. When addressing the Public Function Test the Court has
stated that when private individuals or groups are endowed by the
State with powers or functions governmental in nature, they become
agencies or instrumentalities of the State and subject to its
constitutional limitations. Lee v. Katz, 276 F.3d at 554-55
(internal quotation marks omitted). The public function test is
satisfied only on a showing that the function at issue is "both
traditionally and exclusively governmental." id. at 555.

51. The Fifth Amendment requires the Government obtain Grand
Jury authorization prior to any criminal proceeding. The Sixth
amendment requires the Government inform the Defendant in a
criminal proceeding of the Nature, Type, and Origin of the charges
he is to face long before he is imprisoned. These are exclusive
Governmental functions that are not delegable. The Court forced the
services of CJA attorney Michael S. Meza on the Plaintiff(¶ 3).
Mr. Meza proceeds to take on the traditionally exclusive governmental
function of bringing in new counts and violations(¶ 11-15 and
Exhibit D) and when the Plaintiff brings this fact to the attention

-22-

of the Circuit Court by filing his opening brief( ¶ 16) Defendants

Shaw and Trevino; through their warped sense of justice, makes sure

the actions are never disclosed( ¶ 17-20).

52. Therefore; since the Government and Defendant Trevino

refuse to disclose the Nature, Type, and Origin of the true charges

to the Circuit court as well as the Plaintiff; The Defendant has not

only proven to have taken on a traditionally governmental function

but has also clearly shown his desire to maintain the subversion

of that function.

53. In continuing its analysis the Court moved its' attention

to the Joint Action Test. In that test the Court states "Under the

Joint action test, we consider whether "the state has so far

insinuated itself into a position of interdependence with the

private entity that it must be recognized as a joint participant in

the challenged activity. This occurs when the state knowingly accepts

the benefits derived from unconstitutional behavior". Parks Sch.

of Bus., Inc. v. Symington, 51 F.3d 1480, 1486(9th Cir. 1995)

(internal citations, brackets and quotation marks omitted).

54. In order to answer the Joint Action Test we must first identify the benefit. Blacks Law 8th Edition describes a benefit to be an advantage or privilege. When using this definition one obviously looks to determine what were the advantages or privileges that the Government could have derived from falsifying search warrant affidavits( ¶ 4-6), forcing CJA counsel( ¶ 1-3), ignoring warnings related to false charges( ¶ 9-12), hiding the fact that the Grand Jury did not authorize the counts or violations presented during trial (¶ 11-15), allowing CJA attorney Meza to participate in increasing counts and violations without prior Grand Jury approval(Exhibit D), hiding the verdict forms and convictions, if any, which remain as the basis of the prison term( ¶ 15), and using Shaw and Trevino to clean up the unconstitutional actions by striking briefs and plans to edit out un-indicted, un-arraigned, and un-charged counts( ¶ 17-20). One benefit that the Government has already accepted is the continued prevention of an investigation into the actions of the participants. There are other benefits such as postponing the eventual disclosure and possible criminal prosecutions of those who sat by and watched as well as those who

-24-

were direct participants.

55. Accordingly, it may be said that the Government knowingly accepts the benefit of deterring the investigations and the embarrassment related to such an extensive undertaking directed at acheiving a warped concept of justice; false imprisonment!

56. In analyzing the last two test used by the Circuit to identify joint private and government action related to making a determination that the action was taken under the color of law it would be helpful to look at Defendant's contention that "Plaintiff's complaint suffers from a fatal jurisdictional defect" because "Public Defenders and other attorneys appointed to represent defendants in federal proceedings are not" acting under the color of federal law "for the purposes of Bivens or under 42 U.S.C. § 1983" (motion at 10-11). Defendant supports this contention by referencing Polk County v. Dodson, 454 U.S. 312, 319-28(1983)(held: Public defender **performing lawyer's traditional functions, held not acting "under color of state law"** for purposes of suit under 42 USCS § 1983); and Cox v. Hellerstein, 685 F.2d 1098, 1099(9th Cir. 1982)

$-25-$

(applying same analysis to both Bivens and § 1983 actions).

57. At the outset of this analysis the Plaintiff would like to point out to the court a fatal flaw in Defendant's logic. He asks the Court to dismiss this case under the provisions of Title 28, United States Codes, Section 1915A because it is frivolous because it "fails to present any claim with an arguable or rational basis in law or fact". (motion 12-13). He supports this argument with his mistaken perception that Plaintiff seeks remedy for denial of Pro Se status, Heck v. Humphrey's favorable outcome doctrine, and Polk County and Cox vs Hellerstein. As indicated above the subject of the Plaintiff's action does not deal with seeking remedy for denial of Pro Se status; and, it is premature for the Defendant to attempt to use the Heck v. Humphrey's favorable outcome doctrine until he can do what has yet to be done; identify the Grand Jury charges, Petit jury verdict form, and those counts remaining without acquittal which will support his Heck affirmative defense.

58. Therefore, that leaves the Polk County and Cox cases as

-26-

the only remaining support available for his use of 28 USC § 1915A.

59. In Polk County the Supreme Court stated that a Public
defender performing a lawyer's traditional functions is held not
to be acting "under color of state law" for purposes of suit
under 42 USCS § 1983. In Cox v. Hellerstein the Ninth Circuit
extended that rule to apply to a Bivens action. It should at this
point be noted that in both cases the Plaintiffs had requested and
received appointed counsel to assist them in their criminal matters.
Also, in both cases the Plaintiffs attempted to exclusively use the
Public defender's employment as the sole basis for supporting their
allegations that these attorneys acted under the color of law. In
making their rulings the Supreme Court as well as the Ninth Circuit
did not believe that employment alone was sufficient to classify the
traditional functions of an appointed Public Defender as acting
under the color of law. That is not the case here where we have
substantial fact differences between those cases. First and
foremost the need for appointed counsel was not requested here;
to the contrary it was and still is unwanted and unnecessary.
Second, the need for the appointment of counsel was arbitrarily

-27-

and illegally created by Defendant Shaw and Defendant Trevino

by retroactively removing the Plaintiff's brief, curing the

Government's Default, and concealing the jurisdictional defects

from the Circuit Justices. Third, the subject of this action is,

inter alia, the joint action between the Government and predecessor

CJA attorney Meza's presentation of un-indicted, un-arraigned,

and un-charged counts and Defendant Trevino's unethical cover up

at the appellate level. Fourth, the Sixth Amendment violation of

continued imprisonment without being advised which of the 25

un-indicted counts having 5 various violations alleged against

each forms the basis of imprisonment in light of the obvious

FRCRP Rule 29 acquittal. Fifth is Defendant Shaw's admission on

all allegations by Default(see FRCVP Rule 8(d) stating averments

in a pleading are admitted when not denied). Finally, sixth is

Defendant Trevino's unwillingness to reveal the above activities

in a motion to obtain the Plaintiff's release. Because of the

foregoing the instant action is far different than Polk County

and Cox. It is more similar to United States vs. Price where you

have similar joint action between the state of Mississippi and

-28-

private parties working together to deprive constitutional rights.
After all the Supreme Court decision in Polk County could not
have been meant to give blanket immunity from § 1983 actions to
Public Defenders if they commit the joint venture type violations
as is demonstrated above. No one has such immunities; not even
Judges.

> b. Knowing he had a conflict of interest with the
>    Plaintiff, Federal Defender Sean Kennedy appointed
>    Defendant Trevino without Court Order and in
>    violation of 18 USC § 3006A(b).

60. 18 USC § 3006A(b) only authorizes a Magistrate or an
Article III Judge to appoint counsel. Also, there are no statutes
authorizing any attorney in a case to act in any capacity on
behalf of a party to which they have an admitted conflict. Sean
Kennedy is not a Magistrate or Article III Judge. He is a Federal
Public Defender who has an admitted conflict with the Plaintiff
but ignored this conflict and moved to appoint Defendant Trevino.
Trevino is aware of the conflict(see motion Exhibit A Docket
entries 67 & 69), aware that Kennedy lacks jurisdiction to appoint
him to Plaintiff's case, and is aware that he has no order from
any Judge specifying him as Plaintiff's counsel or outlining

-29-

the scope of his representation (Exhibit M). Therefore, the Defendant

is knowingly and intentionally representing the Plaintiff and

assisting in concealing the Nature, Type, and Origin of the

un-indicted charges his predecessor CJA attorney and the Government

presented to the Petit Jury during trial and is therefore acting

under the pretense of § 3006A(b) and a non-existent Court Order.

## CONCLUSION

61. Defendant Trevino asks this Court to dismiss the Plaintiff's

action against him pursuant to 28 USC § 1915A due to it being

frivolous because he is not to be considered a Government actor

acting under the color of federal law. Plaintiff is asking this

Court to deny this motion based on all of the foregoing plus the

fact that § 1915A only applies to prisoner actions seeking "redress

from a governmental entity or officer or employee of a government

entity". Therefore, Defendant Trevino on the one hand wants the

Court to make a determination that he is an attorney not associated

with the Government but on the other hand he wants dismissal based

on him being a Government entity, officer, or employee.

62. The motion should be **DENIED!**

-30-

## SUMMARY JUDGMENT-FRCVP RULE 56
### Introduction

63. Plaintiff proffers to dismiss all actions including

criminal appeal #06-50580 if this court will order Defendant

Trevino or the Government to produce the indictment signed by a

Grand Jury Foreperson bearing the 25 trial counts with the five

various violations alleged against each(see Exhibit D & E),

along with the verdict forms(see Exhibit F), and along with the

arraignment transcripts proving Plaintiff was arraigned on all

of the 25 counts times 5 violations.

64. Trevino will never produce the documents itemized above.

It is his job to make sure that no one finds out. This is why

he and CJA attorney Michael S. Meza were unnecessarily forced on

the Plaintiff while briefing was complete and in the case of Mr.

Meza; when Plaintiff was unqualified for CJA counsel because he was

bringing in retained counsel(see Exhibit K, Dk# 67 & 69).

This is also why Federal Defender Kennedy violates 18 U.S.C.

§ 3006A by making the unauthorized appointment of CJA attorneys

Crawford and Trevino when he knows he has an admitted conflict

-31-

of interest  ( Exhibit K). This is why when you look at Ninth

Circuit docket entries 7/3/07 and 9/21/07 in Exhibit G they

refer you to orders supposedly filed in the District "June 20,

2007 appointing James M. Crawford" and "September 14, 2007

appointing Phillip A. Trevino"; such orders do not exist(see

Exhibit L, District Dk#s 396-404). This is also why summary

judgment in favor of Plaintiff appears more then equitable.

### ISSUE

      a. Did Congress give Federal Defenders; who have
         ethical conflicts with clients and absent a
         filed **court order,** Jurisdiction to appoint
         Counsel under the Criminal Justice Act?

### ARGUMENT

      a. Congress only gave Jurisdiction to appoint
         counsel under the CJA to Magistrate and
         Article III Judges who actually issue **specific**
         **orders specifying the attorney and his**
         **scope of representation;** therefore Mr. Kennedy's
         appointment of Crawford & Trevino in spite
         of a conflict lacks Jurisdiction.

65. In 18 U.S.C. § 3006A(b) it is clear that Congress only

provided Jurisdiction to appoint counsel under the CJA to

Judges and not to Federal Defenders who have a conflict of interest

such as Federal Defender Kennedy(Exhibit K). It is equally clear

-32-

that absent a filed order from the District Court; Federal

Defender Kennedy was the only party that took any actions that

lead to the representation of Plaintiff by Crawford and Trevino

(see description of appointment process by Gail Ivens in

Exhibit I).

66. FRCVP Rule 56(a) allows for summary judgment after the

"expiration of 20 days". Subsection (d) allows the Court to

"make an order specifying the facts that appear without substantial

controversy".

67. The Plaintiff respectfully request that the court "make

an order specifying the" following facts as they relate to the

instant complaint regarding the activity of Defendant Trevino:

> a. Trevino has no filed court order authorizing his
>    representation of Plaintiff,
> b. Trevino is acting under the pretense of being
>    appointed pursuant to 18 USC 3006A(b) and pursuant to
>    a filed court order specifying him as the
>    Plaintiff's appointed counsel and outlining the
>    scope of that appointment,
> c. Trevino refuses to disclose to the Plaintiff
>    the Grand Jury indictment signed by a Grand Jury
>    Foreperson containing the 25 counts with 5
>    violations of law alleged against each count, the
>    Petit Jury verdict form containing their decision
>    regarding the 25 counts, and the arraignment
>    transcripts indicating the Plaintiff was arraigned
>    on all 25 counts and all 5 violations per each
>    count and
> d. Trevino is working in conjunction with Defendant

-33-

Shaw who has admitted all allegations through
his default.

## CONCLUSION

68. The record is clear, undisputable, and supported

by Defendant Trevino's own letter(Exhibit M) that he is acting

under the pretense of federal law while he and Defendant Shaw

violate the Plaintiff's Constitutional Rights.

Dated this 17th Day of January 2008,

By:

James Davis Bennett/Reg#32589-112
FCI Safford
P.O. Box 9000
Safford, AZ 85548

## CERTIFICATE OF SERVICE

**CASE NO:**  07-CV-5686-CRB

**CASE NAME:**  James Davis Bennett v. Peter L. Shaw, et al.


I certify that the "Plaintiff's Judicial Notice Pursuant to
Rules of Evidence 201, Plaintiff's Opposition to Defendant's
Motion to Dismiss, and Plaintiff's Motion for Summary Judgment
Pursuant to Civil Procedures Rule 56" was served on the parties
indicated below in a manner described:


| PARTY SERVED | METHOD OF SERVICE | DATE SERVED |
|---|---|---|
| Phillip A. Trevino<br>137 N. Larchmont #801<br>Los Angeles, Ca. 90004 | US Mail | 1/26/2008 |


James Davis Bennett

Date  1·23·08

EXHIBIT A

Contents:

-Search warrant suppression hearing excerpts from October 25, 2004 colloquy between Chief Judge Alicemarie H. Stotler and US Attorney Lawrence E. Kole confirming Long Beach City Mortgage as the true lender in the un-authorized indictment's Counts 5, 6, and 7.

-Deeds of Trust, Payment Letters to Borrowers from Long Beach City Mortgage, and Flagstar's purchase commitments.

1  BUT MY UNDERSTANDING IS THAT FLAG STAR -- I'LL CALL FLAG STAR

2  THE LENDER.  I REALIZE FLAG STAR IS REALLY IN THE SECONDARY

3  MARKET.  THEY DIDN'T ACTUALLY MAKE THE ORIGINAL LOAN.  THEY

4  PURCHASED IT FROM THE LENDER AND THEN HELD IT.  BUT I WILL

5  CALL -- FOR EASE OF ARGUMENT I WILL CALL FLAG STAR THE

6  LENDER, BECAUSE AT THE TIME OF THE FORECLOSURE FLAG STAR WAS

7  HOLDING THE NOTE AS THE MORTGAGEE, I GUESS IT IS.

8         WHEN THE FORECLOSURE OCCURRED, FLAG STAR WAS SIMPLY

9  TAKING BACK THE PROPERTY THAT WAS IN FORECLOSURE.  SO I DON'T

10 KNOW THAT COUNSEL IS NECESSARILY CORRECT TO INDICATE THAT

11 THESE PRICES SHOWN IN THESE DOCUMENTS REFLECT AN AUCTION AT

12 WHICH FLAG STAR AND OTHER BIDDERS BID VARIOUS AMOUNTS AND

13 FLAG STAR HAPPENED TO COME OUT ON TOP.  I COULD BE WRONG AND

14 COUNSEL COULD BE CORRECT.  BUT WITHOUT ANY EVIDENCE HERE,

15 IT'S EQUALLY POSSIBLE AND I THINK MORE LIKELY THAT FLAG STAR

16 SIMPLY WAS THE ONLY ENTITY INVOLVED, SIMPLY TOOK THE PROPERTY

17 BACK AND USED AS THE VALUE THE OUTSTANDING PRINCIPAL AND

18 PROBABLY INTEREST AND OTHER THINGS THAT WERE UNPAID FOR THE

19 VALUE PLACED ON THE PROPERTY IN THE FORECLOSURE.

20        THE INDICATION IN THE AFFIDAVIT THAT THERE WAS A

21 LOSS SUFFERED BY FLAG STAR, IN ORDER FOR THAT TO BE REBUTTED

22 OR CHALLENGED, WHAT WE WOULD NEED TO SEE IS A LATER SALE BY

23 FLAG STAR TO A PRIVATE PARTY OF THE PROPERTIES AND TO SEE THE

24 VALUE IT WAS ULTIMATELY SOLD FOR.  AND MY UNDERSTANDING IS

25 THAT THE LOSS FIGURE IS DERIVED FROM WHAT FLAG STAR

Inconsistent
Page Numbers

1    SO THE AFFIDAVIT PROVIDES FACTS UPON WHICH THE

2    MAGISTRATE JUDGE COULD HAVE MADE AN INFERENCE THAT THE

3    APPRAISAL, IN ADDITION TO THE ESCROW, WAS BEING DONE BY

4    MR. BENNETT OR CERTAINLY BY SOMEONE AFFILIATED WITH HIM BEING

5    MR. BALES' SON-IN-LAW.

6        THE COURT:  I THINK THE DEFENDANT WAS TRYING TO

7    THROW DOWN THE GAUNTLET TO THE GOVERNMENT TO ADDRESS THE ROLE

8    OF LONG BEACH CITY MORTGAGE, AND THE -- I THINK THE RESPONSE

9    HAS BEEN THAT ESSENTIALLY THAT WAS THE LENDER FOR THE HIGH

10   SECOND PURCHASE.

11       WOULD THAT BE CORRECT?

12       MR. KOLE:  THAT'S CORRECT.  AND, YOUR HONOR, IT IS

13   TRUE THE AFFIDAVIT DOES NOT REFER TO LONG BEACH CITY MORTGAGE

14   BY NAME.  BUT THE AFFIDAVIT ALSO -- THE AFFIDAVIT DESCRIBES A

15   PATTERN THAT THE AFFIANT SAW IN GENERAL INVOLVING, AMONG

16   OTHER COMPANIES, MR. BENNETT'S WESTBELL MORTGAGE COMPANY.

17   BUT IN REGARD TO THESE THREE TRANSACTIONS, THE AFFIDAVIT

18   RIGHT ON ITS FACE DOESN'T SAY THAT THE MORTGAGE COMPANY --

19   THAT WESTBELL MORTGAGE COMPANY WAS INVOLVED, BUT LIMITS IT TO

20   THE OTHERS, MENTIONS MS. SIMON, AND SAID THAT SHE WAS ONLY A

21   FORMER EMPLOYEE.

22       SO IT'S APPARENT -- IT'S APPARENT FROM THE FACE OF

23   THE AFFIDAVIT THAT THE MORTGAGE COMPANY IS SOME OTHER

24   NON BENNETT ENTITY, BECAUSE THERE IS NO CONTENTION THAT THE

25   MORTGAGE COMPANY WAS OWNED BY MR. BENNETT.  AND SO THAT IS

(10) VERBAL VERIFY FUNDER PRIOR TO RELEASE OF FUNDS

(11) Title work to prove no delinquent taxes, undisclosed liens, judgments or assessments or approval may be null and void.

(12) Original Underwriting package - due certified all copy documents.

(13) All disclosures including but not limited to GFE, TIL, Notice RE Escrow & Servicing, CLA's.

(fax (800 - 782 - 9688))

This Loan Purchase Commitment to purchase this mortgage is void if this loan has been made and/or has above a certain percentage and/or amount which would require a special disclosure as defined by the Home Community Development and Regulatory Improvement Act of 1994 (Pub. L. 103-325 Stat. 2140) enacted in September 1994, containing the Home Ownership and Equity Protection Act of 1994, as required by 12 CFR 226.32 (Restrictions for certain closed-end home mortgages). The Correspondent recognizes that the Correspondent is responsible and liable for all credit and underwriting decisions. The Correspondent agreed to approve and/or to close the mortgage loan. The Correspondent understands that Flagstar Bank is only acting as an investor to purchase the mortgage loan subject to Flagstar Bank requirements.

**ALL CONDITIONS ON THIS LOAN MUST BE FAXED TO FLAGSTAR BANK, FSB 2600 TELEGRAPH BLOOMFIELD HILLS, MI 48302**

Underwriter

(253) Inconsistent Page Numbers

Plaintiff Prefiled Testimony IN 1/6/05 TRANSCRIPTS

1

RECORDING REQUEST BY

99 1574607

AND WHEN RECORDED MAIL TO
LONG BEACH CITY MORTGAGE
INVESTMENTS INC.
2900 ADAMS STREET, C-160
RIVERSIDE, CALIFORNIA
92504

Loan No. LBCM-19

FEE $53 — E.

D.A. FEE Code 20    $ 4

---[Space Above This Line For Recording Data]---

## DEED OF TRUST    NCPF Code 19    $ 42

THIS DEED OF TRUST ("Security Instrument") is made on AUGUST 9, 1999
The trustor is REBECCA FERNANDEZ, A SINGLE WOMAN

("Borrower") The trustee is

JOAN H. ANDERSON

("Trustee") The beneficiary is
LONG BEACH CITY MORTGAGE INVESTMENTS INC, A DELAWARE MORTGAGE
which is organized and existing under the laws of DELAWARE                     , and whose address is
2900 ADAMS STREET, C-160, RIVERSIDE, CALIFORNIA 92504
("Lender") Borrower owes Lender the principal sum of
TWO HUNDRED FIFTY TWO THOUSAND AND 00/100************
Dollars (U S $252,000.00          ) This debt is evidenced by Borrower's note dated the same date as
this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on SEPTEMBER 1, 2029          This Security Instrument secures to Lender (a) the repayment of
the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note, (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument, and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following
described property located in          LOS ANGELES          County, California
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
"A"
A.P.N.: 6055-009-056

which has the address of 1412 WEST 94TH PLACE, LOS ANGELES          [City]
                                              [Street]
California    90047          ("Property Address"),
          [Zip Code]

CALIFORNIA-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT                Form 3005 9/90
Consumer Systems, Inc (602) 644-1342          Page 1 of 8

CAMOS DOT

(90)

503-A

NOTIFICATION SERIE-84 ®

<u>PAYMENT LETTER TO BORROWER</u>

FROM:   LONG BEACH CITY MORTGAGE INVESTMENTS INC.
        2900 ADAMS STREET, C-160
        RIVERSIDE, CALIFORNIA 92504

RE:     Loan No: ALBCM-191
        Property Address:  1412 WEST 94TH PLACE, LOS ANGELES, CALIFORNIA
        90047

TO:     REBECCA FERNANDEZ
        14877 ASH DRIVE
        CHINO HILLS, CALIFORNIA 91709

Dear Borrower:

The monthly payments on the above referred to loan are to begin on   OCTOBER  1
1999    , and will continue monthly until      SEPTEMBER 1        ,    2029  .

Your monthly payment will consist of the following:

| | | |
|---|---|---|
| PRINCIPAL AND INTEREST | $ | 2,118.95 |
| MMI/PMI INSURANCE | | |
| RESERVE FOR TAXES | | |
| RESERVE FOR INSURANCE | | |
| RESERVE FOR FLOOD INSURANCE | | |

TOTAL MONTHLY PAYMENTS         $       2,118.95

You are to make your payments to:

        LONG BEACH CITY MORTGAGE INVESTMENTS INC.
        2900 ADAMS STREET, C-160
        RIVERSIDE, CALIFORNIA 92504

Any correspondence, or calls, in reference to your loan, please refer to the above loan
number.

Copy received and acknowledged.

Date: 8/10/99          _Rebecca Fernandez_
                       REBECCA FERNANDEZ

Inconsistent
Page Numbers

(88)

Case 3:07-cv-05686-CRB    Document 13    Filed 01/25/2008    Page 46 of 55

Don.na

## LOAN PURCHASE COMMITMENT

Correspondent
LONG BEACH CITY MORTGAGE
1900 ADAMS ST C-160
RIVERSIDE CALIFORNIA 92504
Per: REBECCA FERNANDEZ

**FLAGSTAR BANK**

Loan Number : 980716189
Borrower : 1612 W. 94TH PL.
Property Address : LOS ANGELES, CALIFORNIA 90047-
Issued : 20APR    Issue Date: 8/05/99

We are pleased to inform you that the above loan meets our purchase requirements, subject to the following terms of our purchase description, guidelines, policies, agreements and the following additional terms and conditions:

| $152,000.00 | .00 | 360 Months | 7711 |
|---|---|---|---|
| (Loan Amount) | (Buydown) | (Term) | (Program) |

1. The title to this property (original to the above balance, given to secure this loan and all other legal matters pertaining to this transaction) must meet with the approval of FLAGSTAR BANK.
2. There will be an amount required to be held in escrow to cover taxes and mortgage insurance, hazard insurance, and flood insurance and private mortgage insurance, if applicable, at closing.
3. Mortgage Title Insurance for at least the loan amount must be provided at your own expense, through your attorney or title company, and must be in our office prior to the closing being scheduled.
4. Hazard Insurance must be obtained through a company acceptable to us, naming FLAGSTAR BANK, its Successors and/or Assigns at their interest may appear, P.O. Box 51064, Irvine, CA 92619-1064 as beneficiary, in the amount at least equal to the loan amount. A paid receipt for the first year's premium must accompany the policy at closing. A lender is not acceptable. POLICY AND RECEIPT MUST BE ORIGINALS AND PROVIDED AT THE CLOSING FROM AN INSURANCE COMPANY WITH A B+ RATING OR BETTER ACCEPTABLE TO FLAGSTAR BANK.
5. This Loan Purchase Commitment shall be null and void if, in the opinion of FLAGSTAR BANK, there is a material change in the financial condition, employment of the borrower(s), cash equity, occupancy, or any other material conditions prior to or at closing.
6. The property is to comply with all applicable law and code enforcement requirements.
7. This Loan Purchase Commitment will expire   November 21st, 1999   This is not your lock expiration. This loan must close and disburse no later than your lock expiration or loan purchase commitment expiration whichever is earlier or this loan purchase commitment is null and void. If the loan purchase commitment is extended it shall be extended at a different rate and different fee.
THE FOLLOWING ADDITIONAL CONDITIONS MUST BE MET AND ANALYZED BY FLAGSTAR PRIOR TO CLOSING
( 1 ) Flood certification ordered by Flagstar.

THE FOLLOWING CONDITIONS MUST BE COMPLIED WITH AT CLOSING OR THIS LOAN PURCHASE COMMITMENT IS NULL AND VOID
( 1 ) Sign and date typed loan application.
( 2 ) Total new house payment including taxes and insurance cannot exceed $1,500.00
( 3 ) Borrower's cash used for closing, net of the original real estate broker's deposit (if applicable), cannot exceed $0.00
( 4 ) If oil, gas, or mineral rights, the company must issue a letter stating flood policy will insure over those rights.
( 5 ) If any other exceptions above on title work, they must be approved by Flagstar loan closing department prior to draft.
( 6 ) All applicable riders and disclosures per product description and FNMA/FHLMC guidelines.
( 7 ) Flagstar to have first and only lien.
( 8 ) Flood Hazard Notice zone C.
( 9 ) 4506
(10 ) VERBAL VOE BY FUNDER PRIOR TO RELEASE OF FUNDS
(11 ) Title work to prove no delinquent taxes, undisclosed lien, judgments or assessments or approval may be null and void.
(12 ) MORTGAGE LOAN ORIGINATION AGREEMENT

This Loan Purchase Commitment to purchase this mortgage is void if this loan bears rate and/or fees above a certain percentage and/or amount which would require a specific disclosure as defined by the Single Community Development and Regulatory Improvement Act of 1994 (Pub 1, 103-325 Stat. 2160) enacted in September 1994, containing the Home Ownership and Equity Protection Act of 1994. Required by 12CFR 226.32 (Requirements for certain closed-end home mortgages). The Correspondent represents that the Correspondent is responsible and liable for all credit and underwriting decisions. The Correspondent agrees to approve and/or to close the mortgage loan. The Correspondent understands that Flagstar Bank is only acting as an investor to purchase the mortgage loan subject to Flagstar Bank requirements.

NOTE

ALL CONDITIONS ON THIS LOAN MUST BE FAXED TO
-AR BANK, FSB 2600 TELEGRAPH BLOOMFIELD HILLS, MI 48302

Underwriter Rhonda Gnable

1696

(251)

ING REQUESTED BY

ORNIA COUNTIES TITLE CO.

AND WHEN RECORDED MAIL TO
LONG BEACH CITY MORTGAGE
INVESTMENTS INC.
2900 ADAMS STREET, C-160
RIVERSIDE, CALIFORNIA
92504

Loan No. LBCM-18

## 99 1504786

9801819

NCPF Code 19  $ 34

FEE $ 60-W

13

[Space Above This Line For Recording Data]

## DEED OF TRUST

D.A. FEE Code 20   $ 4

THIS DEED OF TRUST ("Security Instrument") is made on   AUGUST 2, 1999
The trustor is ARTURO VARGAS, A SINGLE MAN

("Borrower"). The trustee is

JOAN H. ANDERSON

("Trustee"). The beneficiary is
LONG BEACH CITY MORTGAGE INVESTMENTS INC., A DELAWARE MORTGAGE
which is organized and existing under the laws of DELAWARE                        , and whose address is
2900 ADAMS STREET, C-160, RIVERSIDE, CALIFORNIA 92504
("Lender"). Borrower owes Lender the principal sum of
TWO HUNDRED FIFTY SIX THOUSAND AND 00/100**********
Dollars (U.S. $ 256,000.00          ). This debt is evidenced by Borrower's note dated the same date as
this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on SEPTEMBER 1, 2029          . This Security Instrument secures to Lender: (a) the repayment of
the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following
described property located in                        LOS ANGELES                        County, California:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
"A".
A.P.N.: 5101-029-012

which has the address of 243-245 1/2 W. 56TH ST., LOS ANGELES
                                              [Street]                                    [City]

California          90011                        ("Property Address"):
              [Zip Code]

CALIFORNIA-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT
Document System, Inc (800) 349-1362                                      Page 1 of 8                                    Form 3005 9/90

(85)

SDC-9

## PAYMENT LETTER TO BORROWER

FROM:    LONG BEACH CITY MORTGAGE INVESTMENTS INC.
         2900 ADAMS STREET, C-160
         RIVERSIDE, CALIFORNIA 92504

RE:    Loan No: LBCM-18
       Property Address: 243-245 1/2 W. 56TH ST., LOS ANGELES, CALIFORNIA
       90011

TO:    ARTURO VARGAS
       1041 BROAD AVENUE
       WILMINGTON, CALIFORNIA 90744

Dear Borrower:

The monthly payments on the above referred to loan are to begin on     OCTOBER   1
1999    , and will continue monthly until     SEPTEMBER 1          2029  .

Your monthly payment will consist of the following:

PRINCIPAL AND INTEREST
MMI/PMI INSURANCE
RESERVE FOR TAXES                          $        2,152.59
RESERVE FOR INSURANCE
RESERVE FOR FLOOD INSURANCE

## TOTAL MONTHLY PAYMENTS

$        2,152.59

You are to make your payments to:

    LONG BEACH CITY MORTGAGE INVESTMENTS INC.
    2900 ADAMS STREET, C-160
    RIVERSIDE, CALIFORNIA 92504

Any correspondence, or calls, in reference to your loan, please refer to the above loan number.

Copy received and acknowledged.

Date:   8-3-99

                                    ARTURO VARGAS

(83)                    Inconsistent
                        Page Numbers

LOAN PURCHASE COMMITMENT

**FLAGSTAR BANK**

LONG BEACH CITY MORTGAGE
2900 ADAMS ST C-160
RIVERSIDE, CALIFORNIA 92504

Loan Number: 980718119-AUS
Borrower's: 243-245 1/2 WEST 36TH ST.
Property Address: LOS ANGELES, CALIFORNIA 90011-
Rates: 15CCU    Sales Date: 7/29/99

DLR ARTURO VARGAS

We are pleased to inform you that the above loan meets our purchase requirements, subject to the following terms of our program description, guidelines, policies, agreements and the following additional terms and conditions:

| $1256,000.00 | O/O | 360 Money | FT/1 |
|---|---|---|---|
| (Loan Amount) | (Occupancy) | (Term) | (Program) |

1. The title to the property located at the above address, given to secure this loan and all other legal matters pertaining to this transaction must meet with the approval of FLAGSTAR BANK.

2. There will be an amount required to be held in escrow to cover accruing real estate taxes, hazard insurance, and flood insurance and private mortgage insurance, if applicable, or arising.

3. Mortgage Title Insurance for at least the loan amount must be provided at your own expense, through your attorney or title company, and must be in our office prior to the closing being scheduled.

4. Hazard Insurance must be obtained through a company acceptable to us, naming FLAGSTAR BANK, its Successors and/or its Assigns as their interest may appear, P.O. Box 37044, Irvine, CA, 92619-7044 as beneficiary, in the amount at least equal to the loan amount. A paid receipt for the first year's premium must accompany the policy at closing. A binder is not acceptable. POLICY AND RECEIPT MUST BE ORIGINALS AND PROVIDED AT THE CLOSING FROM AN INSURANCE COMPANY WITH A B+ RATING OR BETTER ACCEPTABLE TO FLAGSTAR BANK.

5. This Loan Purchase Commitment shall be null and void if, in the opinion of FLAGSTAR BANK, there is a material change in the financial condition, employment of the borrower(s), cash equity, occupancy, or any other material situations prior to or at closing.

6. The property is to comply with all applicable law and code enforcement requirements.

7. This Loan Purchase Commitment will expire _November 29th, 1999_. This is not your lock expiration. This loan must close and disburse no later than your lock expiration or loan purchase commitment expiration whichever is earlier or this loan purchase commitment is null and void. If this loan purchase commitment is extended it shall be extended at a different rate and different fee.

THE FOLLOWING ADDITIONAL CONDITIONS MUST BE MET AND ANALYZED BY FLAGSTAR PRIOR TO CLOSING
(1) Flood certification ordered by Flagstar [New credit]
(2) Signed AUS Authorization Form.
(3) **NOTE** APPROVAL IS BASED ON ORIGINAL TERMS REQUESTED; ANY CHANGES ARE SUBJECT TO RE-
(4) UNDERWRITE & AUTOMATION & MAY RENDER APPROVAL INVALID

THE FOLLOWING CONDITIONS MUST BE COMPLIED WITH AT CLOSING OR THIS LOAN PURCHASE COMMITMENT IS NULL AND VOID
(1) Sign and date typed loan application.
(2) Total new house payment including taxes and insurance cannot exceed $2,239.97
(3) Borrower's cash used for closing, net of the original real estate broker's deposit (if applicable), cannot exceed $0.00
(4) If title work shows any gas, oil, or mineral rights, title company must issue a letter stating said policy will insure over these rights.
(5) If any other exceptions show on title work, they must be approved by Flagstar Bank closing department prior to draft.
(6) All applicable riders and disclosures per product description and FNMA/FHLMC guidelines.
(7) Flagstar to have first and only lien.
(8) Flood Hazard Notice none .
(9) 4506
(10) VERBAL VOE BY FUNDER PRIOR TO RELEASE OF FUNDS
(11) Title work to prove no delinquent taxes, undisclosed liens, judgements or assessments or approval may be null and void.
(12) Original Underwriting package - true certified or copy documents.
(13) All disclosures including but not limited to GFE, TIL, Notice RE: Escrow & Servicing, GAF.

( Fax (800-778-9688) )

This Loan Purchase Commitment to purchase this mortgage is void if this loan has been made and/or has fees above a certain percentage and/or amount which would receive a special disclosure as defined by the Single Community Development and Regulatory Improvements Act of 1994 (Pub 1. 103-325 Stat. 2160) enacted in September 1994, containing the Home Ownership and Equity Protection Act of 1994. Required by 12CFR 226.32 (Requirements for certain closed-end home mortgages). The Correspondent recognizes that the Correspondent is responsible and liable for all credit and underwriting decisions. The Correspondent agrees to approve and/or to close this mortgage loan. The Correspondent understands that Flagstar Bank is only acting as an investor to purchase the mortgage loan subject to Flagstar Bank requirements.

ALL CONDITIONS ON THIS LOAN MUST BE FAXED TO
FLAGSTAR BANK, FSB 2600 TELEGRAPH BLOOMFIELD HILLS, MI 48302

Underwriter

CLASS 10
FBI Agent
PFEIFER
TESTIMONY
IN 12/6/05 TRANSCRIPTS

(253)

Inconsistent
Page Numbers

1456

RECORDING REQUESTED BY
CALIFORNIA COUNTIES TITLE CO.

AND WHEN RECORDED MAIL TO
LONG BEACH CITY MORTGAGE
INVESTMENTS INC.
2900 ADAMS STREET, C-160
RIVERSIDE, CALIFORNIA
92504

Loan No. LBCM-23

99 1766634

FEE $ ___

9807/8595

[Space Above This Line For Recording Data]

## DEED OF TRUST

D.A FEE Code 20    $
NCPF Code 19    $

THIS DEED OF TRUST ("Security Instrument") is made on    SEPTEMBER 7, 1999 .
The trustor is WILLIAM ROGERS, AN UNMARRIED MAN

("Borrower"). The trustee is

JOAN H. ANDERSON

("Trustee"). The beneficiary is
LONG BEACH CITY MORTGAGE INVESTMENTS INC., A DELAWARE MORTGAGE
which is organized and existing under the laws of DELAWARE                , and whose address is
2900 ADAMS STREET, C-160, RIVERSIDE, CALIFORNIA 92504
("Lender"). Borrower owes Lender the principal sum of
TWO HUNDRED FORTY SEVEN THOUSAND FIVE HUNDRED AND 00/100************
Dollars (U.S. $ 247,500.00          ). This debt is evidenced by Borrower's note dated the same date as
this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on OCTOBER 1, 2029          . This Security Instrument secures to Lender: (a) the repayment of
the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of the Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. "For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following
described property located in          LOS ANGELES                County, California:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
"A".
A.P.N.: 5115-012-007

which has the address of 768-770 1/2 E. 43RD PL., LOS ANGELES
                                    [Street]                                [City]

California    90011                      ("Property Address");
            [Zip Code]

CALIFORNIA-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT                      Form 3005 9/90
Document Systems, Inc. (800) 649-1362                      Page 1 of 8

(95)

## PAYMENT LETTER TO BORROWER

FROM:  LONG BEACH CITY MORTGAGE INVESTMENTS INC.
2900 ADAMS STREET, C-160
RIVERSIDE, CALIFORNIA 92504

RE:  Loan No: LBCK-23
Property Address:  768-770 1/2 E. 43RD PL., LOS ANGELES, CALIFORNIA
90011

TO:  WILLIAM ROGERS
768-770 1/2 E. 43RD PL.
LOS ANGELES, CALIFORNIA 90011

Dear Borrower:

The monthly payments on the above referred to loan are to begin on   NOVEMBER   1
1999   , and will continue monthly until   OCTOBER 1   ,   2029

Your monthly payment will consist of the following:

| | |
|---|---|
| PRINCIPAL AND INTEREST | $ 2,081.11 |
| MMI/PMI INSURANCE | |
| RESERVE FOR TAXES | |
| RESERVE FOR INSURANCE | |
| RESERVE FOR FLOOD INSURANCE | |
| | |
| | |
| **TOTAL MONTHLY PAYMENTS** | $ 2,081.11 |

You are to make your payments to:

LONG BEACH CITY MORTGAGE INVESTMENTS INC.
2900 ADAMS STREET, C-160
RIVERSIDE, CALIFORNIA 92504

Any correspondence, or calls, in reference to your loan, please refer to the above loan number.

Copy received and acknowledged.

Date: 9-8-99

WILLIAM ROGERS

(93)

**EXHIBIT B**

Contents:

   -Jurisdictional statements notifying in the last paragraph
    the lack of district court jurisdiction resulting from the
    Government's neglect to get prior Grand Jury approval.

   -Second Superseding Indictment showing the Government
    fraudulently used Flagstar for Jurisdictional purposes
    as the lender disbursing loan proceeds in counts 5, 6, and
    7(page lines 17-26 & page 6 lines 1-3) when they admitted
    Long Beach was the true lender and the un-Constitutional
    lack of Grand Jury authorization(page 7 lines 18-20).

Jurisdiction executed by the UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION IN SANTA ANA was predicated on TITLE 18, Sections 1343, 1344, 2(b) and 225 of the UNITED STATES Criminal Codes which are Wire Fraud, Bank Fraud, Causing an Act to Be Done and Continuing Financial Crimes Enterprise Respectively. The District Court has Jurisdiction over all offenses against the laws of the UNITED STATES pursuant to 18 U.S.C. 3231.

The Final Judgment against Appellant was entered October 6, 2006. Excerpt A. The Notice of Appeal of that Judgment was timely filed on October 6, 2006. Excerpt A. This is an appeal as of right pursuant to Federal Rules of Appellate Procedures, Rule 4 (b). Jurisdiction of the UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT is pursuant to 28 U.S.C. 1291.

This Appeal is from a final Judgment that disposes of all parties Claims.

Although Jurisdiction may have been predicated as indicated above The Government has failed to produce a legitimate signed indictment by a duly sworn Foreperson. This in addition to the other misrepresentations by the Government which are presented herein makes the Jurisdictional statements appearing above questionable. In addition The Government used an un-licensed Assistant Attorney to present their case to both the Grand Jury and the Petit Jury thus raising ethnical Concerns.

v

FILED
CLERK, U.S DISTRICT COURT

SEP - 7 2005

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2004 Grand Jury

UNITED STATES OF AMERICA,  ) No. SA CR 03-25(B)-AHS
                           )
            Plaintiff,     ) S E C O N D
                           ) S U P E R S E D I N G
        v.                 ) I N D I C T M E N T
                           )
JAMES DAVIS BENNETT,       ) [18 U.S.C. § 1343: Wire Fraud;
                           ) 18 U.S.C. § 1344: Bank Fraud;
            Defendant.     ) 18 U.S.C. § 225: Continuing
                           ) Financial Crimes Enterprise; 18
                           ) U.S.C. § 2(b): Aiding and
                           ) Abetting]

    The Grand Jury charges:

              COUNTS ONE THROUGH FOUR

              [18 U.S.C. §§ 1343 and 2(b)]

INTRODUCTION

    At all times relevant to this indictment:

    1.   Defendant JAMES DAVIS BENNETT ("BENNETT") was the owner

of West Belle Realty, a company in the business of representing

buyers and sellers in real estate transactions, West Belle

Mortgage, a company in the business of originating mortgage loans

//

//

BAS:bas
BAS

1  (collectively) transactions, and West Belle Mortgage Escrow, a
2  company in the business of providing escrow services for real
3  estate transactions (collectively "West Belle").

4      2.    Steven Brian Rogers ("Rogers") was a realtor and loan
5  agent at West Belle.

6      3.    Donna M. Simon ("Simon") was a loan agent at Long Beach
7  City Mortgage, a company in the business of originating mortgage
8  loans for real estate transactions.

9      4.    Benny Ibarra ("Ibarra") and Ricardo Omar Garcia
10  ("Garcia") were employees of West Belle.

11  THE FRAUDULENT SCHEME

12      5.    Beginning on a date unknown and continuing through in
13  or about January 2002, in Los Angeles and Orange Counties, within
14  the Central District of California, and elsewhere, Defendant
15  BENNETT, Rogers, Simon, Ibarra, Garcia and others knowingly
16  devised, participated in, and executed a scheme to defraud
17  mortgage lenders and to obtain money and property by means of
18  materially false and fraudulent pretenses, representations and
19  promises.

20      6.    In carrying out this scheme, Defendant BENNETT, Rogers,
21  Simon, Ibarra, Garcia and others engaged in and caused others to
22  engage in the following fraudulent and deceptive acts, practices
23  and devices, among others:

24      a.    Defendant BENNETT, Rogers, Simon, Ibarra, and
25  other co-schemers would identify residential real estate (the
26  "properties") for sale.

27  //

28                                 2